# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELISA VALERIO ESPINOZA, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>WEST COAST TOMATO GROWERS, LLC,<br><br>Defendant. | Case No.:  14-CV-2984 W (KSC)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DOC. 29]** |

Pending before the Court is a motion for summary judgment filed by Defendant West Coast Tomato Growers, LLC ("WCTG"). [Doc. 29.] The Court decides the matter on the papers submitted and without oral argument pursuant to Civil Local Rule 7.1(d)(1). For the reasons that follow, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's motion.

//
//
//
//
//
//

# I. BACKGROUND

WCTG is a California limited liability company that operates farms "in or around" San Diego County. (*First Amended Complaint* ("FAC") [Doc. 9] ¶¶ 15–16.) Defendant employed all Plaintiffs as tomato packers, sorters, and field workers. (*Id.* [Doc. 9] ¶¶ 21–27.) Plaintiffs allege, among other things, that Defendant did not pay them for working off-the-clock, did not pay overtime wages due, did not provide itemized wage statements, did not permit legally required meal periods, did not provide necessary tools for the work, did not provide a safe working environment, did not provide necessary safety devices, and did not provide drinking water. (See *id.* [Doc. 9] ¶¶ 33–59.)

The FAC states claims for: (1) wrongful discharge in violation of public policy; (2) failure to pay Adverse Effect Wage Rate ("AEWR") due; (3) failure to pay all wages due; (4) failure to pay minimum wage for all hours worked; (5) failure to pay overtime wages; (6) failure to pay all wages due upon termination; (7) failure to indemnify employees for necessary expenditures; (8) failure to provide meal periods; (9) knowing and intentional failure to provide accurate and complete itemized earnings statements; (10) for violation of 29 U.S.C. § 1801 et seq.; (11) unlawful competition in violation of Cal. Bus & Prof. Code § 17200 et seq.; and (12) for enforcement of penalties pursuant to Cal. Labor Code § 2698 et seq. (*FAC* [Doc. 9] ¶¶ 60–163.)

WCTG now moves for summary judgment. [Doc. 29.] Plaintiffs oppose. [Doc. 30.]

# II. LEGAL STANDARD

Summary judgment is appropriate under Rule 56 where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. See Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A

dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

  A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. See id. at 322–23. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (internal citation omitted).

  "The district court may limit its review to the documents submitted for the purpose of summary judgment and those parts of the record specifically referenced therein." Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1030 (9th Cir. 2001). Therefore, the Court is not obligated "to scour the record in search of a genuine issue of triable fact." Keenan v. Allen, 91 F.3d 1275, 1279 (9th Cir. 1996) (citing Richards v. Combined Ins. Co., 55 F.3d 247, 251 (7th Cir. 1995)).

  If the moving party meets its initial burden, the nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995) (citing Anderson, 477 U.S. at 252) ("The mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient."). Rather, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

1    When making this determination, the court must view all inferences drawn from
2 the underlying facts in the light most favorable to the nonmoving party.  See Matsushita,
3 475 U.S. at 587.  "Credibility determinations, the weighing of evidence, and the drawing
4 of legitimate inferences from the facts are jury functions, not those of a judge" ruling on a
5 motion for summary judgment.  Anderson, 477 U.S. at 255.

7 **III.   DISCUSSION**
8    **A.   Wrongful Discharge in Violation of Public Policy**
9    WCTG first contends that Plaintiffs Valerio, Bermudez, and Gomez cannot prevail
10 on their claim for wrongful discharge in violation of public policy.  (*Def.'s Mot.* [Doc.
11 29-1] 8:23–10:15.)
12    "The elements of a claim for wrongful discharge in violation of public policy are
13 (1) an employer-employee relationship, (2) the employer terminated the plaintiff's
14 employment, (3) the termination was substantially motivated by a violation of public
15 policy, and (4) the discharge caused the plaintiff harm."  Yau v. Santa Margarita Ford,
16 Inc., 229 Cal. App. 4th 144, 154 (2014).  California pursues a public policy of ensuring a
17 safe and healthy work environment for employees.  See, e.g., Cal. Lab. Code § 6300 et
18 seq.
19    First, WCTG contends that none of these three Plaintiffs believed that there was
20 anything unsafe or dangerous about WCTG's production standards.  (*See Def.'s Mot.*
21 [Doc. 29-1] 9:23–10:2 (citing *Def.'s Statement of Undisputed Facts* ("SUF") [Doc. 29-5]
22 ¶ 18).)  The SUF paragraph to which Defendant cites supports only the assertion that
23 these Plaintiffs did not believe the packing conditions to be unsafe or dangerous.  (*Def.'s*
24 *SUF* [Doc. 29-5] ¶ 18.)  This is irrelevant.  Plaintiffs do not need to prove that they
25 believed the procedures were unsafe—they must prove that they actually were unsafe,

and that those unsafe procedures (or their failure to comply with them) substantially motivated their terminations.[1]  See Yau, 229 Cal. App. 4th at 154.

Second, Defendant contends that "there is no evidence that any other packers had difficulty meeting the production standards in 2013." (*See Def.'s Mot.* [Doc. 29-1] 10:3–6 (citing *Def.'s SUF* [Doc. 29-5] ¶ 19).)  This is also irrelevant.  That other packers met production standards does not imply that those standards were safe.

Defendant's motion for summary judgment on Plaintiffs' claim for wrongful discharge in violation of public policy will be denied.

### B. Failure to Pay AEWR

WCTG contends that Plaintiffs cannot prevail on their claim for failure to pay all wages due at AEWR, or Adverse Effect Wage Rate. (*Def.'s Mot.* [Doc. 29-1] 10:16–11:16.)

The AEWR is the minimum wage an employer must pay if that employer employs temporary foreign workers pursuant to the "H-2A Program," which allows for temporary foreign agricultural worker visas.  See Ruiz v. Fernandez, 949 F. Supp. 2d 1055, 1059 (E.D. Wash. 2013).

"The H–2A program allows an employer who anticipates a shortage of available U.S. workers to apply to the United States Department of Labor for certification to bring into the country a certain number of temporary, non-immigrant foreign workers to

---

[1] Defendant contends in its statement of facts that Plaintiff Gomez voluntarily left his position after disciplinary notices having to do with low production. (*Def.'s SUF* [Doc. 9] ¶¶ 34–36.)  Parties have not briefed whether these circumstances amounted to constructive termination.  For the purpose of this motion, Gomez was terminated.  See Turner v. Anheuser-Busch, Inc., 7 Cal. 4th 1238, 1251 (1994) ("In order to establish a constructive discharge, an employee must plead and prove, by the usual preponderance of the evidence standard, that the employer either intentionally created or knowingly permitted working conditions that were so intolerable or aggravated at the time of the employee's resignation that a reasonable employer would realize that a reasonable person in the employee's position would be compelled to resign."); Matsushita, 475 U.S. at 587 (instructing the court to draw all reasonable inferences in favor of the nonmoving party); Celotex, 477 U.S. at 323 (noting that the burden rests with the party seeking summary judgment).

1  accomplish specified labor during specified periods." Murillo v. Servicios Agricolas
2  Mex Inc., No. CV-07-2581-PHX-GMS, 2012 WL 1030084, at *9 (D. Ariz. Mar. 27,
3  2012), aff'd sub nom. Murillo v. Servicio Agricolas Mex, Inc., 592 F. App'x 613 (9th Cir.
4  2015).  "In order to bring nonimmigrant workers to the U.S. to perform agricultural work
5  [pursuant to the H-2A program], an employer must first demonstrate . . . that there are not
6  sufficient U.S. workers able, willing, and qualified to perform the work in the area of
7  intended employment at the time needed and that the employment of foreign workers will
8  not adversely affect the wages and working conditions of U.S. workers similarly
9  employed." 20 C.F.R. § 655.103.
10      "The purpose of the [AEWR] is 'to ensure that the wages of similarly employed
11  U.S. workers will not be adversely affected' by the employment of H–2A workers." See
12  Ruiz, 949 F. Supp. 2d at 1059 n.1 (quoting 20 C.F.R. § 655.1300(c)).  Specifically, "[i]f
13  the worker is paid by the hour, the employer must pay the worker at least the AEWR, the
14  prevailing hourly wage rate, the prevailing piece rate, the agreed-upon collective
15  bargaining rate, or the Federal or State minimum wage rate, in effect at the time work is
16  performed, whichever is highest, for every hour or portion thereof worked during a pay
17  period." 20 C.F.R. § 655.122(l).
18      WCTG draws a distinction between tomato packers and tomato sorters.  As it
19  reasons, it has no obligation to pay the AEWR for one type of worker so long as it did not
20  hire H-2A workers of that particular type during the relevant time frame.  (*See Def.'s
21  Mot.* [Doc. 29-1] 10:17–11:16.)  It offers no specific authority for this proposition,
22  instead appearing to rely on the general language of the regulations.  On the other hand,
23  Plaintiffs contend that WCTG segregates the job titles of its unskilled agricultural
24  workers and refuses to hire Americans for some positions so as to illegally hire H-2As as
25  packers when there is no shortage of Americans able, willing, and qualified to perform
26  the tomato-packing work. (*See Pls.' Opp'n* [Doc. 30-1] 14:2–16:28.) See 20 C.F.R. §
27  655.103.  As a result, according to Plaintiffs, WCTG's payment of the AEWR to only
28  tomato packers and not tomato sorters skirts the requirement that employment of H-2As

1  "not adversely affect the wages and working conditions of workers in the United States
2  similarly employed." See 8 U.S.C. § 1188.
3       Based on Defendant's moving papers, there would appear to be a genuine dispute
4  as to whether tomato packers and tomato sorters are similarly employed.  If tomato
5  sorters and tomato packers are interchangeable from a practical standpoint, an employer
6  could save money simply by dividing its unskilled agricultural workforce.  It could hire
7  H-2A workers as "tomato packers" without a legitimate shortage of qualified Americans
8  and pay them more per hour than its American equivalent "tomato sorters"—to whom
9  Social Security and other benefits are due.  This would circumvent the AEWR and the
10 purpose of the H-2A program and would allow for a financial incentive to hire foreign
11 labor over domestic.  The law does not contemplate this result.  20 C.F.R. § 655.1300(c);
12 8 U.S.C. § 1188 (requiring that "the employment of the alien in such labor or services
13 will not adversely affect the wages and working conditions of workers in the United
14 States similarly employed").
15      Defendant's motion for summary judgment on this issue will be denied.
16
17      **C.  Failure to Pay for Off-the-Clock Work**
18      WCTG contends that there is no evidence to establish that Plaintiffs worked off the
19 clock or were not paid what they were due. (*Def.'s Mot.* [Doc. 29-1] 11:17–16:28.)
20      "To prove an [off-the-clock] claim, a plaintiff must demonstrate (1) he or she
21 performed work, for which (2) he or she did not receive compensation, and of which (3)
22 the employer was aware or should have been aware." Stiller v. Costco Wholesale Corp.,
23 298 F.R.D. 611, 628 (S.D. Cal. 2014), leave to appeal denied (Aug. 22, 2014).
24      Here, WCTG repeatedly contends that no evidence supports Plaintiffs' allegations
25 that they were made to work off the clock. (*See Def.'s Mot.* [Doc. 29-1] 11:17–16:28.)
26 Yet Plaintiffs point to numerous deposition transcripts that establish a genuine dispute of
27 fact as to whether both field workers and packing shed workers performed
28 uncompensated work that did not appear in their payroll records. (*See Pls.' Response to*

*Def.'s SUF* [Doc. 30-3] ¶¶ 22, 25 (as to field worker Plaintiffs), 31, 58 (as to packing shed Plaintiffs).)

WCTG makes a second argument, that Plaintiffs cannot establish damages resulting from a lack of compensation for off-the-clock work because their testimony "is no more than speculation" that conflicts with WCTG's payroll records. (*See Def.'s Mot.* [Doc. 29-1] 14:12–15:14.) Plaintiffs' testimony that is based on personal knowledge is not speculation. To the extent it conflicts with WCTG's records, that conflict gives rise to a genuine factual dispute to be decided by the finder of fact, not the Court ruling on a summary judgment motion. See Fed. R. Civ. P. 56; Anderson, 477 U.S. at 255.

In light of the foregoing, Defendant's motion for summary judgment on this issue will be denied.

### D.   Indemnification for Necessary Expenditures

WCTG next contends that Plaintiffs cannot prevail on their claim for failure to reimburse them for necessary work-related expenditures. (*See Def.'s Mot.* [Doc. 29-1] 17:1–19:9.)

"(a) An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties . . . ." Cal. Lab. Code § 2802. To prove violation of this section, a plaintiff must demonstrate: (1) that he incurred expenses as an employee of the defendant; (2) that those expenses were reasonably necessary to the discharge of his

duties; and (3) that the employer did not reimburse the plaintiff.[2]  See id.; Gattuso v. Harte-Hanks Shoppers, Inc., 42 Cal. 4th 554, 568–69 (2007).

WCTG refers to several expenditures in its motion with respect to both the field workers and the packing shed workers.  (*See Def.'s Mot.* [Doc. 29-1] 17:1–19:9 (citing *Def.'s SUF* [Doc. 29-5] ¶¶ 226–35).)  WCTG's brief arguments and corresponding citations do not establish the absence of a genuine dispute as to the lack of necessity of

---

[2] WCTG introduces this section of its motion with an element that does not appear in the statute, that an employer "either know or have reason to know that the employee has incurred [a necessary] expense"—this accompanies a citation to Hammitt v. Lumber Liquidators, Inc., 19 F. Supp. 3d 989, 1000 (S.D. Cal. 2014) (Curiel, J.).  (*See Def.'s Mot.* [Doc. 29-1] 17:11–18.)  The Hammitt court evidently borrowed the additional element from Marr v. Bank of Am., 2011 WL 845914 at *1 (N.D. Cal. Mar. 8, 2011), which in turn sourced it from another Northern District case, Stuart v. RadioShack Corp., 641 F. Supp. 2d 901, 903 (N.D. Cal. 2009).  See Hammitt, 19 F. Supp. 3d at 1000.

There is no published California authority finding an employer notice requirement in this section.  And though the Ninth Circuit affirmed Marr in an unpublished memorandum, 506 Fed. Appx. 661 (9th Cir. 2013), notice was evidently not at issue in the appeal—the parties agreed upon the requirement at the District Court level.  Marr, 2011 WL 845914, at *1 ("The parties agree on these requirements.").

In short, in Stuart a Magistrate of the Northern District apparently conceived of an extra element from a statute that is devoid of any reference to notice (actual or constructive) as a prerequisite to employer liability.

The Stuart court began its analysis with a determination that section 2802 is ambiguous on its face because it contained no provision having to do with "when the duty to reimburse is triggered."  641 F. Supp. 2d at 902.  The Court need proceed no further in its analysis of Stuart.  See People v. Woodhead, 43 Cal. 3d 1002, 1007–08 (1987) ("When [statutory] language is clear and unambiguous, there is no need for construction.").  The absence of conditional language does not imply that the language that does appear is ambiguous and requires court supplementation.  Id. at 1007 (citing People v. Overstreet, 42 Cal.3d 891, 895 (1986)) ("the objective of statutory interpretation is to ascertain and effectuate legislative intent.")  If the California legislature had intended to insert an employer notice requirement into § 2802, it could have done so.  It did not.  The duty to reimburse does not need to be triggered by notice, actual or constructive.  It exists so long as the uncompensated employee expenditures or losses are reasonably necessary to the work.

The employer's duty under § 2802 depends upon whether the uncompensated employee expenditures or losses were reasonably necessary, which can, in turn, turn on whether the employer either knew or should have known about the expenditures.  The Court considers employer notice in this context only.

9

any of the items it discusses[3]—with one exception. See Fed. R. Civ. P. 56; Celotex, 477 U.S. at 322. Plaintiffs concede that they did not purchase face shields. (*See Pls.' Response to Def.'s SUF* [Doc. 30-3] ¶ 226.) They cannot pursue a claim seeking reimbursement for expenditures they did not incur. See Cal. Lab. Code § 2802.

Defendant's motion for summary judgment on this issue will be granted to the extent Plaintiffs seek indemnification for face shields. It will otherwise be denied.

### E.   Failure to Provide Meal Periods

WCTG next contends that Plaintiffs lack evidence to prove that they were not provided adequate meal periods. (*Def.'s Mot.* [Doc. 29-1] 19:10–20:3.)

"An employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes . . . ." Cal. Lab. Code § 512.

WCTG contends that Plaintiffs lack evidence to prove this claim. (*See Def.'s Mot.* [Doc. 29-1] 19:23–24.) Without specifying to what evidence they refer, providing any reasoning at all, or citing to any applicable Federal Rule of Evidence, it summarily pronounces, "[g]iven that the foremen were responsible for clocking their respective crews in from lunch, Plaintiffs' belief[s] about the length of their meal period [are] inadmissible speculation." (*See id.* [Doc. 29-1] 19:24–26.) To the extent this can be construed as an evidentiary objection, it is overruled.

Plaintiffs cite to multiple deposition transcripts that unequivocally establish a genuine factual dispute as to whether workers' meal periods lasted the requisite thirty minutes. (*See Pls.' Response to Def.'s SUF* [Doc. 30-3] ¶ 27 (citing, among others, *Zafra Depo.* [Doc. 29-22] 121–22 (including testimony that the foreman would sometimes give workers less than thirty minutes for lunch—as little as 20 or 25 minutes); *Bautista Depo.*

---

[3] As discussed in footnote 2, the absence of employee notice relates to Plaintiffs' claims only insofar as it relates to the issue of necessity.

[Doc. 31-8] 62 ("[s]ometimes there [were] still a few minutes left before the 30 minutes, and it was 'Let's Go[]'  [from the foreman]."), 63 (including testimony that the foreman would order workers back to lunch three or four minutes early "most of the time").)

In light of the foregoing evidence, it is troubling that WCTG would represent to the Court in a summary judgment motion that Plaintiffs' meal periods claim "lacks evidentiary support" under the standard of Rule 56. (*See Def.'s Mot.* [Doc. 29-1] 19:23–24)  This is simply not the case.

Defendant's motion for summary judgment on this issue will be denied.

### F. Failure to Provide Itemized Statements

WCTG submits that it is entitled to summary judgment on Plaintiffs' claim for failure to provide accurate, itemized statements in violation of Cal. Labor Code § 226(a). (*Def.'s Mot.* [Doc. 29-1] 20:4–27.)

First, it contends that the one-year statute of limitations has expired as to Plaintiffs Capistran, Salgado, and Lopez. (*See Def.'s Mot.* [Doc. 29-1] 20:15–21.) See Cal. Code Civ. Proc. § 340(a) (establishing the applicable one-year limitations period).  Indeed, there does not appear to be any dispute that more than one year passed between the time these three Plaintiffs left WCTG (during which they received their last allegedly defective wage statement) and the time they filed this action. (*See Pls.' Response to Def.'s SUF* [Doc. 30-3] 258–60, 281.)  WCTG meets its burden of showing the absence of a genuine dispute of fact as to the lapse of the limitations period.

In response, Plaintiffs contend that "an employee is deemed to have suffered an injury under the definition of Labor Code [§] 226(e)(2)(B) when an employer fails to provide accurate and complete information on any of the nine items required by statute, and the employee cannot promptly and easily determine required information from the wage statement alone." (*Pls.' Opp'n* [Doc. 30-1] 20:14–21:3.)  This has nothing to do with when or whether the limitations period expired.  Whether these three Plaintiffs

11

suffered an injury has no bearing on whether more than one year separates that injury from the filing date.

Plaintiffs also respond by arguing that Plaintiffs Lopez and Salgado sent a notice to the Labor and Workforce Development Agency ("LWDA") in July of 2014—within one year of the alleged violations—and that the limitations period should be tolled on the Labor Code § 226 claim as a result. (*Pls.' Opp'n* [Doc. 30-1 21:4–19].) They offer no authority in support of the proposition that mailing such a notice tolls the limitations period for violation of California Labor Code § 226.

In light of the foregoing, Plaintiffs do not meet their responsive burden. See Celotex, 477 U.S. at 324.

WCTG makes one final argument here. It contends that it is entitled to judgment on the § 226 claim as to all Plaintiffs because they cannot establish that they worked off-the-clock—referencing the issue discussed previously in Part C. (*See Def.'s Mot.* [Doc. 29-1] 20:22–27.) As discussed in Part C, WCTG does not establish the absence of a genuine dispute as to whether Plaintiffs worked off-the-clock. This contention fails.

WCTG is entitled to summary judgment on this claim as to Plaintiffs Capistran, Salgado, and Lopez only.

### G. Violation of 29 U.S.C. § 1801, et seq.

WCTG contends that there is no evidence to support Plaintiffs' claim for violation of the Migrant & Seasonal Agricultural Worker Protection Act ("AWPA"), 29 U.S.C. § 1801, et seq. (*Def.'s Mot.* [Doc. 29-1] 21:1–19.)

It seems to argue that because Plaintiffs could not identify any safety law they believed had been violated and because WCTG took steps to prevent violations of safety laws, WCTG could not have violated the law. (*See Def.'s Mot.* [Doc. 29-1] 21:1–19.) As discussed above, the record is replete with facts that give rise to a reasonable dispute as to whether the working conditions were safe. (*See Pls.' Response to Def.'s SUF* [Doc. 30-3] 300–07.) WCTG does not meet its burden here. See Celotex, 477 U.S. at 323.

Defendant's motion for summary judgment on this issue will be denied.

### H. Unlawful Competition in Violation of Cal. Bus. & Prof. Code § 17200, et seq.

WCTG contends that it is entitled to summary judgment on Plaintiffs' claim for violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq. (*Def.'s Mot.* [Doc. 29-1] 21:21–23:25.)

It first argues that Plaintiffs lack standing to bring their UCL claim to the extent they premise it on WCTG's alleged failure to maintain a safe work environment. (*Def.'s Mot.* [Doc. 29-1] 22:9–24.)

"[A]n action based on [the UCL] . . . 'borrows' violations of other laws and treats these violations, when committed pursuant to business activity, as unlawful practices independently actionable under [§ 17200, et seq.] . . . ." See Farmers Ins. Exchange v. Sup. Ct., 2 Cal. 4th 377, 383 (1992). However, in order for a private litigant to bring a UCL action, that person: (1) must have suffered injury in fact within the standing requirements of Article III of the United States Constitution; and (2) must have lost money or property as a result of unfair competition. See Cal. Bus. & Prof. Code § 17204; Kwikset Corp. v. Superior Court, 51 Cal. 4th 310, 322–23 (2011). "[A] plaintiff . . . must demonstrate some form of economic injury." Kwikset, 51 Cal. 4th at 323. "There are innumerable ways in which economic injury from unfair competition may be shown. A plaintiff may (1) surrender in a transaction more, or acquire in a transaction less, than he or she otherwise would have; (2) have a present or future property interest diminished; (3) be deprived of money or property to which he or she has a cognizable claim; or (4) be required to enter into a transaction, costing money or property, that would otherwise have been unnecessary." Id.

WCTG contends that because Plaintiffs could not have lost money or property as a result of a failure on its part to maintain a safe work environment, they do not have standing to pursue their UCL claim on this ground. (*Def.'s Mot.* [Doc. 29-1] 22:9–24.)

13

Plaintiffs do not respond to this argument in their opposition.  (*See Pls.'* Opp'n [Doc. 30-1] 22:4–13.)  WCTG is correct.  To the extent Plaintiffs premise their UCL claim on the lack of a safe working environment, they premise it on something apart from the economic injury required by Cal. Bus. & Prof. Code § 17204.  As such, they do not have standing to pursue a UCL claim on this ground.  See Cal. Bus. & Prof. Code § 17204.

Second, WCTG argues that "as set forth in [previous sections of its motion], Plaintiffs cannot demonstrate that they are owed wages, reimbursements, or other meal period penalties."  (*Def.'s Mot.* [Doc. 29-1] 23:23–25 (citing fifty-one paragraphs of its statement of facts).)  As discussed previously, genuine disputes of material fact preclude a grant of summary judgment on this ground.

WCTG's motion for summary judgment on this claim will be granted only as to any theory premised on a failure on the part of WCTG to maintain a safe and healthy working environment.  It will otherwise be denied.

### I.     Private Attorneys General Action

WCTG argues that Plaintiffs' Private Attorneys General Action ("PAGA"), Cal. Lab. Code § 2698 et seq., claim is subject to summary judgment in its favor because of failure to comply with Federal Rule of Civil Procedure 23 and related manageability issues.

The Ninth Circuit has held that "a PAGA suit is fundamentally different than a class action."  Baumann v. Chase Inv. Servs. Corp., 747 F.3d 1117, 1123 (9th Cir.), cert. denied, 135 S. Ct. 870 (2014) (internal quotation omitted).  As such, and as discussed in this Court's previous order in the related matter of Rincon v. West Coast Tomato Growers, LLC, 13-CV-2473 W (KSC) [Doc. 97, 7/11/2016], Plaintiffs' PAGA claim is not subject to Rule 23.  Because Rule 23(b) is the source of the manageability requirement, it does not apply here.

Defendant's motion for summary judgment on this issue will be denied.

## IV. CONCLUSION & ORDER

For the foregoing reasons, Defendant's motion for summary judgment is **GRANTED IN PART AND DENIED IN PART**.

Specifically, Defendant's motion is granted to the extent Plaintiffs seek indemnification for face shields. It is granted as to Plaintiffs Capistran, Salgado, and Lopez on their claim for failure to provide itemized statements. It is granted as to Plaintiffs' UCL claim on any theory premised on a failure to maintain a safe and healthy work environment.

It is otherwise denied.

All evidentiary objections to deposition testimony referenced herein are overruled. All other evidentiary objections are overruled as moot without prejudice.

**IT IS SO ORDERED.**

Dated: August 24, 2016

Hon. Thomas J. Whelan
United States District Judge

14-CV-2984 W (KSC)